UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA OUELLETTE, | ) | CASE NO. 5:16-cv-2144 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| AMERIDIAL, INC., | ) | **AND ORDER** |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is plaintiff's pre-discovery motion for conditional certification of a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* (Doc. No. 14, 15 ["Mot."].) Defendant has filed a memorandum in opposition (Doc. No. 21 ["Opp'n"]) and plaintiff has filed a reply (Doc. No. 22 ["Reply"]). For the reasons discussed below, the motion is granted in part and a collective, as set forth herein, is conditionally certified, with counsel being directed to jointly submit a notice complying with this order within 10 days.

## I. BACKGROUND

Defendant Ameridial, Inc. ("Ameridial" or "defendant"), an Ohio corporation headquartered in North Canton, Ohio, is a call center outsourcing company that provides call center services (*i.e.*, customer acquisition and customer service) to large and mid-size clients. (Doc. No. 1, Complaint ["Compl."] ¶¶ 2, 28) To provide its services, defendant employs both "brick-and-mortar" and home-based customer service representatives ("CSR"), who are hourly, non-exempt employees. (*Id.* ¶¶ 3, 5.) Defendant operates ten (10) brick-and-mortar call centers throughout Ohio, Illinois, Maine and North Carolina. (*Id.* ¶ 4.)

Plaintiff Sandra Ouellette ("Ouellette" or "plaintiff") was employed by defendant from November 2013 until January 2016 as a CSR in its Fort Kent, Maine call center, where there were approximately 65-80 CSRs employed at any given time. (*Id*. ¶¶ 11, 18, 27, 29; Declaration of Sandra Ouellette (Doc. No. 15-2 ["Ouellette Decl."]) ¶¶ 2-3.) In that position, Ouellette was responsible for answering incoming phone calls from insurance policy-holders and providing them with guidance regarding benefits and coverage, processing claims, and enrolling in plans. (Ouellette Decl. ¶ 3.) All of the CSRs at the Maine facility worked in the same office concourse, performed the same duties, and reported to and received their instructions from Karen Deprey, the head manager. (*Id.*) Ms. Deprey, in turn, reported to an individual named "Mike" who worked in Ameridial's North Canton, Ohio headquarters and regularly visited the Maine call center. (*Id.*)

In order to perform her job as a CSR, plaintiff was required to start-up and log-in to various computer programs, software programs, servers, and applications in order to access information and software. This process typically took 10 to 15 minutes each day, but could take up to 30 minutes if there were password problems. Pursuant to a company-wide policy, plaintiff was not permitted to "clock in" for her shift until after the start-up/log-in process was complete. (Compl. ¶¶ 11, 12, 31; Ouellette Decl. ¶¶ 7-9.) In addition, at the end of her shift, plaintiff was required to "clock out" prior to logging out of the computer programs, software programs, and applications, and shutting down her computer. This process took an additional 3 to 5 minutes. (Compl. ¶¶ 13, 33-34; Ouellette Decl. ¶ 10.) Plaintiff alleges that neither she nor any other CSR was compensated for this "off-clock" time, despite the fact that these processes were an essential part of the CSR job and directly benefitted defendant. (Compl. ¶¶ 12, 14, 34; Ouellette Decl. ¶ 11.)

Plaintiff brings this action on behalf of herself and other similarly situated employees to obtain declaratory relief and to recover unpaid wages and overtime, liquidated damages, penalties,

fees and costs, pre- and post-judgment interest, and any other remedies to which she may be entitled. (Compl. ¶ 19.) Because plaintiff maintains that the alleged FLSA violation was willful under 29 U.S.C. § 255(a), her wage demand dates back three years.

## II.  LEGAL STANDARD

A collective action under the FLSA "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing[.]" 29 U.S.C. § 216(b). Thus, in order to join a collective action, an employee must (1) be "similarly situated" to the plaintiff who maintains the action, and (2) give his or her written consent to join. *Comer v. WalMart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). A collective action brought under § 216(b) is distinguishable from a Rule 23 class action in that plaintiffs in a collective action must "opt-in" rather than "opt-out" of the lawsuit. *Id.* The "opt-in" nature of the collective action "heightens the need for employees to 'receiv[e] accurate and timely notice concerning the pendency of the collective action.'" *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 483 (S.D. Ohio 2014) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L.Ed.2d 480 (1989)). The statute, therefore, vests in the district court the discretion to facilitate notice to potential plaintiffs "in appropriate cases[.]" *Hoffmann-La Roche*, 493 U.S. at 169.

The Sixth Circuit has "'implicitly upheld a two-step procedure for determining whether an FLSA case should proceed as a collective action.'" *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 764 (N.D. Ohio 2015) (quoting *Heibel v. U.S. Bank Nat'l Ass'n*, No. 2:11–CV–00593, 2012 WL 4463771, at *2 (S.D. Ohio Sept. 27, 2012) (citing *In re HCR ManorCare, Inc.*, No. 113866, 2011 WL 7461073, at *1 (6th Cir. Sept. 28, 2011)); *see also Watson v. Advanced Distrib. Servs., LLC*, 298 F.R.D. 558 (M.D. Tenn.2014) (applying two-step procedure); *McNelley v. ALDI, Inc.*,

No. 1:09 CV 1868, 2009 WL 7630236 (N.D. Ohio Nov. 17, 2009) (same). "The first [step] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546 (quotation marks and citations omitted).

At the first step, the plaintiff bears the burden of showing that the employees in the collective are "similarly situated." *Comer*, 454 F.3d at 546. To satisfy this burden at the initial notice stage, the plaintiff must only "make a modest factual showing" that she is similarly situated to the other employees she is seeking to notify. *Id.* 546-47 (quotation marks and citations omitted). The standard at the notice stage is "fairly lenient . . . and typically results in 'conditional certification' of a representative class[.]" *Id.* at 547 (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)) (further citation omitted).

During this preliminary stage, a district court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility. *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011). Moreover, the FLSA does not import "the more stringent criteria for class certification under Fed. R. Civ. P. 23" and it is also "less stringent than [the] Rule 20(a) requirement that claims 'arise out of the same action or occurrence' for joinder to be proper[.]" *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009).

As regards the initial inquiry, the Sixth Circuit has observed that "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. The court in *O'Brien* also explained, however, that "[s]howing a 'unified policy' of violation is not required" to support conditional certification of a collective action. *Id.* at 584. Rather, plaintiffs may also meet the similarly situated requirement if they can demonstrate, at a

4

minimum, that "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* at 585; *see Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865-66 (S.D. Ohio 2005) (at this stage, a plaintiff must establish a "colorable basis" for his allegation that others are similarly situated and should therefore be notified of the action) (quotation marks and citations omitted); *see also Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (at the initial notice stage, "the named plaintiff need only show that [her] position [is] similar, not identical, to the positions held by the putative class members").

During the second step, courts have discretion to make a thorough finding regarding the "similarly situated" requirement, based upon a more fully developed record. *See Comer*, 454 F.3d at 547. At this step, a court is more inclined to consider "'(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff, [and] (3) fairness and procedural considerations . . . .'" *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 367 (E.D. Tenn. 2006) (quoting *Theissen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir.2001)). Should the district court determine that, after this more rigorous and fact-intensive analysis, the claimants are similarly situated, "the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice." *Douglas v. GE Energy Reuter Stokes*, No. 1:07CV077, 2007 WL 1341779, at *4 (N.D. Ohio Apr. 30, 2007).

### III. DISCUSSION

There are three matters for the Court to consider with respect to plaintiff's motion: (1) whether to conditionally certify a collective and, if so, how to define it; (2) whether to approve the notice proposed by plaintiff; and (3) what initial discovery information to require of defendant. The Court will address each issue in turn.

### A.      Certification of a Collective

Plaintiff seeks to conditionally certify the following collective:

> All current and former hourly customer service representatives who worked for Ameridial, Inc. in any of its brick-and-mortar call centers in the United States at any time during the last three years.

(Mot. at 89.)[1] Defendant argues in opposition that no collective should be certified and, in the alternative, that any certified collective should not include CSRs who work at call centers other than Maine and should not cover any employee outside the two-year statute of limitations.

Defendant first asserts that "[u]nder the meager evidence set forth by Ouellette in support of her motion . . . no basis exists for the certification of a conditional collective class." (Opp'n at 207.) Defendant points to the following factors that typically guide a court's consideration at the initial "similarly situated" step of the analysis, and finds them all lacking in this case: "(1) whether potential plaintiffs were identified; (2) whether affidavits of potential plaintiffs were submitted; and, (3) whether there is evidence of a 'widespread' discriminatory plan affecting those plaintiffs, which was maintained by defendants." (Opp'n at 212, quoting *Waggoner*, 110 F. Supp. 3d at 765.)[2]

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

[2] Defendant also opposes plaintiff's submission of the U.S. Department of Labor Fact Sheet #64: Call Centers Under the Fair Labor Standards Act (Mot., Ex. 8), arguing that it goes to the merits and should be disregarded. This is correct. The Court has not considered this exhibit.

Although there has not yet been any published notice to potential plaintiffs, one person has already filed a consent to join the lawsuit. (*See* Doc. No. 23-1, Consent of Jeannine Mazziotta, a CSR at a North Carolina call center.) Defendant did not challenge this person's consent and, therefore, the Court assumes that she is a legitimate, potential plaintiff.[3] To that extent, an additional potential plaintiff has been identified.

Further, despite there being no affidavits other than plaintiff's, plaintiff has submitted three job postings from defendant's own website setting forth job descriptions for "healthcare customer service" – one for the same Maine location where plaintiff worked, one for Jackson Twp. in Canton, Ohio, and a third for a North Carolina location. (*See* Doc. No. 15-8.) Defendant does not challenge the authenticity of these submissions. These job descriptions are broadly consistent with the job that Ouellette describes doing on defendant's behalf. In the Court's view, this establishes a "modest factual showing" of similarity in the job of CSR at any location where healthcare customer services are provided, at least three of which are in Maine, Ohio, and North Carolina.

Defendant's reliance on *Gaffers v. Sitel Worldwide Corp.*, No. 3-16-0128, 2016 WL 3137726 (M.D. Tenn. June 6, 2016) is misplaced. Although the court there concluded that plaintiff's single declaration in support of his motion was insufficient, that conclusion was made in the face of a great amount of contrary information submitted by the defendant. This information, which was unrefuted by the plaintiff in *Gaffers*, explained significant differences among the various positions that plaintiff sought to include in the collective. Here, defendants have not

---

[3] The Court also notes that the consent states that Ms. Mazziotta "worked on an hourly basis as an hourly call center customer service representative for Ameridial, Inc. . . . at some point during the past three years." (Doc. No. 23-1 at 238.) Later in this opinion, the Court will explain that it is limiting the scope of the collective to two years. But since defendant has also challenged application of a three-year statute of limitations, surely it would have at least mentioned this flaw if Ms. Mazziotta's consent were ineffective because her employment did not fall within the two-year limitations period for which defendant now advocates. That said, Ms. Mazziotta will be required to resubmit her consent if she still fits within the contours of the collective defined by this order.

supplied such information, relying instead upon rather generic arguments in opposition to the motion.

Finally, defendant asserts that plaintiff's submission fails to supply evidence of any widespread discriminatory plan maintained by Ameridial. In particular, defendant argues that plaintiff has not shown that the call centers in all four locations focus exclusively on the service area of "Healthcare Call Center Solutions." Defendant argues that, contrary to the allegations in her complaint that "[r]egardless of which brick-and-mortar location they are located at, Defendant's customer service representatives perform the same basic job duties and are required to use the same computer programs, software programs, servers, and applications[,]" (Compl. ¶ 8), in her motion plaintiff explains that Ameridial "has expanded into the [service] areas of 'Commercial Sales & Service,' 'Higher Education,' and 'Not-for-Profit Services.'" (Opp'n at 214, quoting Mot. at 100.)

One might conclude that to show similarity in this case among potential plaintiffs Ouellette need only show that their jobs were paid by the hour and involved the use of a computer that they were required to log into  and out of outside the time they were clocked in for pay purposes. It would not really matter which service line any potential plaintiff was working within, so long as he or she was subjected to the same policy for clocking in and out of work. That said, the breadth of the collective can be limited by defining it to include only CSRs at any of the locations who worked in the "Healthcare Call Center Solutions" service line, since it is undoubtedly safe to assume, even at this juncture, that they were all using the same work tools, software, and procedures. Defendant does not argue that all of these healthcare CSR positions would not be similar.

Defendant also argues that plaintiff alleges that she "'ordinarily worked 40 or more hours per workweek' but 'Defendant did not pay her off-the-clock time.'" (*Id.* at 216, quoting Comp. ¶¶ 36.) As to the proposed class, however, plaintiff "merely alleges that 'the putative class typically worked 40 hours or more in a workweek.'" (*Id.*, quoting Compl. ¶ 42.) Defendant asserts that plaintiff has submitted no documentary evidence that other CSRs repeatedly worked in excess of 40 hours per week.

Defendant relies on *Armstrong v. Weichert Realtors*, No. 05-3120 (JAG), 2006 WL 1455781 (D.N.J. May 19, 2006) for the proposition that plaintiff's sole declaration in support of a motion for certification of a collective is insufficient to make the "modest factual showing" required. But, here, plaintiff has supplied more that her own declaration. Although the materials supplied may be of limited evidentiary value at a later stage of these proceedings, they are sufficient at this pre-discovery stage to make a showing for conditional certification.

The Court concludes that plaintiff has met the requisite showing for this early step of the process and is entitled to conditional certification of the collective. That said, the Court will remain open to decertification of any or all of the collective should discovery prove that such would be warranted.

Turning then to the definition of the collective, the Court finds merit in defendant's argument that plaintiff has made absolutely no showing of willfulness that would warrant expansion of the time frame from the typical two years to three years. *See* 29 U.S.C. § 255(a). "Violations are willful if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Herman v. Palo Grp. Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir. 1999) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985)). In her complaint, plaintiff alleges:

> Defendant's violation of the FLSA were knowing and willful. Defendant knew or could easily have determined how long it took for its customer service representatives to complete the pre-shift start-up/log-in process and Defendant could have properly compensated Plaintiff and the Class for the pre-shift start-up/log-in work they performed, but did not. Likewise, Defendant also knew or could have easily determined or tracked how long it took for each customer service representatives to complete the post-shift computer log-out process, and Defendant could have paid Plaintiff and the Class for the post-shift work they performed, but did not.

(Compl. ¶ 78.) When read closely, this paragraph of the complaint does not actually allege that defendant knew that its procedures *violated the statute*. It merely alleges that defendant knew or could have known the amount of time that logging in and logging off took. That is a subtle, but important, difference. There is also no allegation that defendant has been sued for FLSA violations previously, which would constitute sufficient notice to establish willfulness. *See Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991) (violation is willful where evidence shows that employer had notice by virtue of earlier violations involving an agreement to pay unpaid overtime and assurances of future compliance).

Accordingly, the Court will conditionally certify the following collective, subject to decertification in whole or part, upon a timely motion, should discovery establish reason to do so:

> All current and former hourly Healthcare Call Center Solutions customer service representatives who worked for Ameridial, Inc. in any of its brick-and-mortar call centers in the United States at any time on or after August 26, 2014.

**B.      Initial Discovery**

Plaintiffs further seek an order requiring defendant:

> to identify all potential opt-in plaintiffs by providing their names, last known addresses, dates and locations of employment, job titles, phone numbers, and e-mail addresses in an electronic and importable format within 10 days of the entry of the order.

(Mot. at 89.) Defendant argues that this request is too broad and goes beyond what is required to supply notice to potential plaintiffs. (Opp'n at 222, citing *Lemmon v. Harry & David Operations, Inc.*, No. 2:15-cv-779, 2016 WL 234854, at *6 (S.D. Ohio Jan. 20, 2016) (putative class members' rates of pay, job titles, reason for termination, and personnel/payroll records "has no relation to the identification of and/or ability to contact putative class members").)

The Court agrees that plaintiff's request is too broad and will limit the discovery information that defendant must supply at this juncture to the names, last known addresses, and dates and locations of employment of any potential plaintiffs. The Court will require that notice be given by ordinary mail, not by email and/or telephone; therefore, no email addresses and no telephone numbers will be required. As to job titles, the collective that has been certified limits the positions covered to CSRs who worked in the service area of healthcare call center solutions. At this point, if their job titles vary at all, that is not relevant to the ability to provide notice to potential plaintiffs who worked in this service area.

## C.     The Notice Procedure

Plaintiff's motion sets out a procedure and content for notice to potential plaintiffs. Defendant challenges certain narrow aspects of the proposed language of the notice. Aside from challenging the application of a three-year statute of limitations (which the Court addressed above) defendant opposes a 60-day opt-in period, preferring 45 days, and asks that the notice of right to join the lawsuit would include information stating that plaintiffs might be responsible for Ameridial's costs should Ameridial prevail. (Opp'n at 221, citing *Heaps v. Safelite Solutions, LLC*, No. 2:10 CV 729, 2011 WL 1325207, at *8, 9 (S.D. Ohio Apr. 5, 2011) (citing cases).)

The Court finds that these are reasonable requests. Therefore, the Court will require those changes to the notice. As defendant has not challenged the plaintiff's proposed notice in any other respect, the notice is otherwise approved.

### III. CONCLUSION

Having considered the arguments and the record as it is to date, the Court conditionally certifies the following FLSA collective:

> All current and former hourly customer service representatives who worked for Ameridial, Inc. in the Healthcare Call Center Solutions service line in any of its brick-and-mortar call centers in the United States at any time on or after August 26, 2014.

Further, with the benefit of the Court's rulings herein, the parties shall jointly submit their proposed notice to potential plaintiffs, along with the proposed consent form, pursuant to the Case Management Plan and Trial Order, which is issuing separately.

**IT IS SO ORDERED**.

Dated: July 12, 2017

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**